UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
In re:                                                    :    Chapter 11
                                                          :
IDI CONSTRUCTION COMPANY, INC.,                           :    Case No.: 04-17881 (PCB)
                                                          :
         Debtor.                                          :
                                                          :
----------------------------------------------------------X

## MEMORANDUM DECISION OVERRULING
## OBJECTIONS TO DESIGNATION OF
## CHAPTER 11 FUNDS AS PART OF DEBTOR'S ESTATE

**A P P E A R A N C E S:**

MARILYN SIMON & ASSOCIATES
Attorneys for Debtor
110 East 59th Street
New York, NY  10022

    Marilyn Simon, Esq.
        Of Counsel


PLATZER, SWERGOLD, KARLIN, LEVINE,
  GOLDBERG & JASLOW, LLP
Attorneys for Official Committee of Unsecured Creditors
1065 Avenue of the Americas
18th Floor
New York, NY  10018

    Sherri D. Lydell, Esq.
    Scott K. Levine, Esq.
        Of Counsel


ARENT FOX PLLC
Attorneys for Broadway Houston Mack Development LLC
1675 Broadway
New York, NY  10019

    Schuyler G. Carroll, Esq.
    Robert M. Hirsch, Esq.
        Of Counsel

MAZUR CARP & RUBIN, PC
Attorneys for American Interiors, Inc.
1250 Broadway
New York, NY 10001

 Gary L. Rubin, Esq.
  Of Counsel


DLA PIPER RUDNICK GRAY CARY LLP
Attorneys for Seele, LP
1251 Avenue of the Americas
New York, NY 10020

 Thomas Califano, Esq.
  Of Counsel


TEDD BLECHER, ESQ.
Attorney for Matros Automated Electrical Construction Corp.
225 Broadway
New York, New York 10007


**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

  IDI Construction Company, Inc. (the "Debtor" or "IDI") was a general contracting and construction management company that formerly operated in the New York metropolitan area. Its principals, Ted Kohl ("Kohl") and James Stumpf ("Stumpf"), diverted substantial amounts of the debtor's funds to themselves, ultimately pleaded guilty, and agreed to repay the estate $2.4 million. Four creditors -- Seele, L.P. ("Seele"), American Interiors, Inc. ("American Interiors"), Matros Automated Electrical Construction Corp. ("Matros"), and Broadway Houston Mack Development LLC ("Broadway Houston") -- contend that they have superior rights to portions of the settlement funds. None of the parties have insisted that the contest must take the form of an

2

adversary proceeding, see FED. R. BANKR. P. 7001(2), and for the reasons that follow, the Court concludes that they do not have interests in the settlement funds superior to the IDI Estate.

## BACKGROUND

IDI was incorporated on October 12, 1995, to engage in the general contracting and construction management business. Stumpf was the debtor's president, and Kohl was a consultant. (Application [re Motion to Approve Paragraph 8 of Plea Agreement With Ted Kohl and Paragraph 7 of Plea Agreement With James Stumpf], dated Dec. 7, 2005, at ¶5) ("Plea Agreement Application") (ECF Doc. # 244.) IDI worked on a variety of construction projects over the years. In June 2004, it called a meeting with its largest trade creditors to discuss its financial difficulties. (Statement By The Committee Of Unsecured Creditors In Response To Objections Filed By Broadway Houston Mack Development, LLC., American Interiors, Inc. and Seele LP Regarding Rights And Entitlement To Certain Proceeds To Be Received By The Debtor's Estate Under Plea Agreements, dated Mar. 13, 2006, at ¶ 1)("Committee Statement")(ECF Doc. # 280.) The Debtor and an unofficial creditors committee, represented by Platzer, Swergold, Karlin, Levine Goldberg & Jaslow, LLP (the "Platzer Firm"), eventually negotiated a pre-petition payout plan, and IDI commenced this chapter 11 case on December 15, 2004. (Id., at ¶¶ 2-4.)

### A.    The Settlement Agreements

The cornerstone of the pre-negotiated plan was a settlement between Stumpf and Kohl on the one hand, and the IDI Estate on the other. (Id., ¶ 6.) Between June 2000 and December 2003, Stumpf and Kohl "borrowed" substantial sums from IDI. (See Accountant's Affidavit [of

3

Esther DuVal], sworn to Mar. 9, 2006, at Ex. A, B ("DuVal Affidavit"))(ECF Doc. # 279.)  The loans were funded from IDI accounts commingled with payments for construction jobs, construction management fees from jobs that did not involve subcontractors, and the return of overnight investments.  (Id., at ¶ 4.)  As of the petition date, Stumpf owed IDI $1,165,000, and Kohl owed $1,030,000.  (Plea Agreement Application, at ¶ 5.)  The IDI Estate also held unliquidated tort claims against the two principals.  Under the settlement, the IDI Estate would release Kohl and Stumpf in exchange for the payment of $2,395,000.  (Id., at ¶ 7.)  Originally, the settlement was to be funded entirely from Kohl's 50% interest in the sale of the Southampton house he owned with his wife.  (See Stipulation And [Proposed] Order Settling The Estate's Claims Against James Stumpf And Ted Kohl) (ECF Doc. # 140.)

      Before the settlement could be approved, events intervened.  On May 20, 2005, Kohl and Stumpf were indicted by a New York Grand Jury, apparently with the active assistance and cooperation of four construction subcontractors, including Seele (collectively, the "Complaining Creditors").  Kohl and Stumpf eventually entered into plea agreements with the New York County District Attorney.  The Creditor's Committee appointed in the chapter 11 case and represented by the Platzer Firm interceded in the plea negotiations to protect the Estate's interest in the settlement.  Stumpf and IDI plead guilty to a Class D felony, to wit, that between March 12, 2003 and April 30, 2004, Stumpf and IDI received in excess of $3,000.00 from Asprey Limited, a construction project owner.  The money was to be held in trust for the benefit of the Complaining Creditors, but was not paid to the intended beneficiaries in violation of the New York Lien Law.  Stumpf also stipulated, in paragraph 7 of his plea agreement, to make restitution aggregating $353,621 to the New York District Counsel of Carpenters and the Mason Tenders Trust Fund.  Finally, he agreed to pay $150,000 to the Platzer Firm on behalf of IDI's unsecured

4

creditors in the chapter 11 case in three annual installments of $50,000 each.  (Plea Agreement Application, Ex. A.)

Kohl's was the more significant plea for present purposes.  He plead guilty to a Class C felony and admitted that between March 12, 2003 and April 30, 2004, he intentionally aided IDI in submitting false invoices to Asprey Limited, which Asprey relied on in issuing in excess of $50,000 to IDI.  Like Stumpf, he also admitted that he received funds from Asprey for the benefit of the Complaining Creditors, but failed to pay these funds over in violation of the New York Lien Law.[1]

In addition to a prison term, Kohl committed, in paragraph 8 of his plea agreement, to make voluntary payments in lieu of restitution in the aggregate amount of $3 million.  He agreed to pay $33,488 to the New York State Department of Taxation and Finance and $566,512 to the Complaining Creditors.  (See Committee Statement, at ¶ 15.)  The balance of $2.4 million was payable to the Platzer Firm on behalf of the unsecured creditors in IDI's chapter 11 case in discharge of all claims of the Debtor and the IDI Estate.  The funds were to come from three sources: (1) $500,000, derived from the sale of the Southampton house, that was already in the hands of IDI's bankruptcy counsel, Marilyn Simon, Esq.; (2) $1 million from the sale of Kohl's interest in a limited partnership that owned real estate in London; and (3) $900,000 from the sale of Kohl's Manhattan apartment.  (Plea Agreement Application, Ex. B.)

Seele objected before the state court to the Kohl plea agreement, and in particular, to the $2.4 million payable to the IDI Estate for the benefit of the general unsecured creditors.

---

[1]    Kohl also pleaded guilty to a Class E felony relating to the filing of false state income tax returns.

5

(Committee Statement, Ex. E.)  The state court nevertheless approved the plea agreements in an undated order that was apparently signed in late November 2005.  (Plea Agreement Application, Ex. C.)  Implicitly overruling Seele's objection, the order stated that the voluntary payments to be made to the Platzer Firm in lieu of restitution "are not restitution for payment to the Complaining Creditors and said payments shall be held by the Platzer Firm for distribution to all creditors of the [IDI] chapter 11 case."

This Court approved the settlements embodied in the plea agreements pursuant to an order dated Jan. 12, 2006.  (ECF Doc. # 253.)  That order overruled the objection by the Complaining Creditors that the settlement payments constituted restitution payable to them rather than the Estate, but preserved all other claims to the settlement funds.

B.      **The Trust Fund Claimants**

American Interiors, Seele and Matros (collectively, the "Trust Fund Claimants") argue that the settlement funds paid or to be paid by Kohl constitute trust funds under New York's Lien Law, and should be paid to them in satisfaction of their claims before any payment is made to the IDI Estate.  Each worked as a subcontractor on one or more IDI projects, but did not receive full payment under their subcontracts.  American Interiors entered into a subcontract with IDI, and began working on the Payton Lane project, in or about March 2002.  (See American Interiors' Objection To Any Distribution Of Plea Agreement Funds Except In Accordance With Article 3-A Of The New York State Lien Law, dated Feb. 28, 2006, at Ex. B, ¶¶ 5-6)(ECF Doc. # 268.)  It has filed a proof of claim in this case in the aggregate amount of $1,893,305.  Seele worked on

the Asprey Limited project beginning in or about March 2003,[2] and has filed a proof of claim in this case in the aggregate amount of $2,391,205.31. Finally, Matros acted as a subcontractor on several IDI contracts, and according to its proof of claim, it holds a claim in the sum of $491,152.78 that accrued between June 2000 and November 2004.

In addition to their trust fund claims, Seele maintains that the IDI Estate's claim to the settlement funds is barred by the doctrine of in pari delicto.

C.    **Broadway Houston**

Broadway Houston Mack Development LLC ("Broadway Houston") is not a subcontractor, and raises a different type of claim. It asserts that it acquired a superior right to the $500,000 proceeds from the sale of the Southampton house when it obtained a pre-judgment temporary retraining order enjoining the disposition of the sale proceeds, and subsequently obtained an order of attachment.

**DISCUSSION**

A.    **The Trust Fund Claims**

Under Article 3-A of the New York Lien Law, a contractor holds in trust the funds received in connection with a contract for the improvement of real property, as well as any rights of action with respect to those funds. N.Y. LIEN LAW § 70 (McKinney 1993). The trust funds must be used to pay certain designated expenses, including subcontractors and materialmen claims, related payroll taxes, unemployment taxes, employment benefits and insurance premiums. N.Y. LIEN LAW § 71(2), 71(4). Any use of the trust funds for a non-statutory

---

[2]    The information relating to the Asprey project and the claim asserted by Seele are based on the allegations in the complaint attached to Seele's proof of claim (No. 92).

7

purpose constitutes a diversion. Id., § 72(1); RLI Ins. Co. v. New York States Dep't of Labor, 766 N.E.2d 934, 938 (N.Y. 2002); Canron Corp. v. City of New York, 674 N.E.2d 1117, 1120 (N.Y. 1996).

If the contractor is engaged in multiple projects, the funds received in connection with each contract comprise a separate trust. Id., § 70(2)("The funds received by a contractor . . . under or in connection with each contract . . . shall be a separate trust."); Hamburg Bros., Inc v. Jachles, 620 N.Y.S.2d 870, 871 (N.Y. App. Div. 1994). The contractor is not required to maintain separate accounts for each trust, provided that the contractor maintains detailed books and records that clearly show the allocation attributable to each trust. See N.Y. LIEN LAW § 75 (1)-(3). The failure to maintain the books and records required by § 75 raises the presumption that the contractor has misapplied the trust funds. Id., § 75(4).

**B.    The Burden of Proof**

The trustee holds bare legal title to the trust funds, and an equitable interest vests in the balance of the trust funds only after all trust claims have been satisfied. RLI Ins. Co., 766 N.E.2d at 938; City of New York v. Cross Bay Contracting Corp., 709 N.E.2d 459, 462 (N.Y. 1999); Canron Corp., 674 N.E.2d at 1122-23. The beneficiary may enforce its rights against any non-beneficiary that receives trust assets with knowledge of their trust status. Canron Corp., 674 N.E.2d at 1120; see N.Y. LIEN LAW § 77(3)(a)(i). In addition, a beneficiary may bring a representative action on behalf of all trust beneficiaries. Id., § 77(1). Finally, the trustee may also maintain an action. Id.

The Article 3-A trust is akin to an express trust, see Canron Corp., 674 N.E.2d at 1122, and the normal rules of tracing apply. Consequently, the beneficiary must trace its interest in the

8

trust funds, even where the trustee commingles trust assets with other assets. Cassirer v. Herskowitz (In re Schick), 234 B.R. 337, 342-43 (Bankr. S.D.N.Y. 1999)(collecting cases); see 237 Constr. Corp. v. St. Stanislaus Roman Catholic Church, 219 N.Y.S.2d 312, 313 (N.Y. Sup. Ct. 1961)(Rabin, J.)(complaint to impress trust under Art. 3-A of the Lien Law in certain funds, that did not allege that the funds at issue emanated from sources prescribed under Article 3-A, was legally insufficient). The failure to trace is fatal to a beneficiary's claim.[3]

Here, the Trust Fund Claimants concede that they cannot trace their interests into the settlement funds. Indeed, Mr. or Mrs. Kohl acquired their interests in the assets that are being used to fund the settlement before IDI was formed in 1995, and, therefore, before any diversions ever took place. Mrs. Kohl purchased the Manhattan apartment in 1983. (Committee Statement, Ex. J.) The Kohls acquired the Southampton house in 1986. (Id., Ex. F.) Finally, Kohl acquired his limited partnership interest in 1993. (Id., Ex. H.) While the Trust Fund Claimants have speculated that Kohl may have diverted trust funds to make payments in connection with these assets, they have failed to offer any evidence that remotely supports that point. Accordingly, the Trust Fund Claimants failed to carry their burden of proof that the settlement funds are traceable

---

[3] Seele cited two cases, Cooper v. Grisofe Elec. Corp. v. In re Building Dynamics, Inc.), 134 B.R. 715 (Bankr. W.D.N.Y. 1992) and In re Casco Elec. Corp., 28 B.R. 191 (Bankr. E.D.N.Y.), aff'd 35 B.R. 731 (E.D.N.Y. 1983), in support of the proposition that the burden of tracing falls on the trustee. (See Brief Of Seele L.P. In Support Of Its Objection To The Debtor's Motion For Entry Of An Order To Approve Ted Kohl Criminal Plea Agreement And Requesting The Court (i) Deem The Chapter 11 Funds Trust Funds Pursuant To New York Lien Law And (ii) Direct The Platzer Firm To Pay The Chapter 11 Funds To Seele And The Complaining Creditors, dated Feb. 28, 2006, at 7)("Seele Brief")(ECF Doc. # 270.) The cases are clearly distinguishable; they involved preference actions by chapter 7 trustees to recover payments to subcontractors from accounts commingled with trust and non-trust funds. The trustee in a preference action must prove that the debtor transferred property that, but for the transfer, would have become property of the estate. Article 3-A trust funds are not property of the estate for preference purposes, Buchwald v. Di Lido Beach Resort (In re McCann, Inc.), 318 B.R. 276, 282-83 (Bankr. S.D.N.Y. 2004), and accordingly, the trustee failed in each case to prove that the debtor transferred its own property from the commingled account. See Building Dynamics, 134 B.R. at 717; Casco Elec., 28 B.R. at 195. This contest is not a preference action; here, the trust beneficiaries are attempting to impress a trust on the settlement funds in the actual or constructive possession of the IDI Estate, and they have the burden of showing that settlement funds are traceable to the Article 3-A trust funds.

9

to the Article 3-A trust. For the same reason, the Trust Fund Claimants have failed to prove that the IDI Estate holds the settlement funds in constructive trust for their benefit.

In the end, the Trust Fund Claimants argue that they are entitled to the settlement funds because they have been the victims of fraud and conversion. They have failed, however, to show that the settlement funds are connected with that fraud or conversion. The settlement funds are property of the estate, and the Trust Fund Claimants have no greater right to them than any other unsecured creditor.

C.   **In Pari Delicto**

Seele contends that the use of the settlement funds to pay administrative expenses would violate the doctrine of in pari delicto because IDI participated in the criminal acts committed by Kohl and Stumpf, and could not sue them to recover the settlement funds. (Seele Brief, at 9 (citing Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991)). Under New York law, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d at 120; accord Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.), 336 F.3d 94, 100 (2d Cir. 2003); Wight v. Bank America Corp., 219 F.3d 79, 86 (2d Cir. 2000); Mediators, Inc. v. Manney (In re Mediators Inc.), 105 F.3d 822, 826 (2d Cir. 1997). Cf. Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093 (2d Cir. 1995)(applying Connecticut law). The so-called Wagoner Rule [4] is derived from the fundamental principle of

---

[4]   The Wagoner Rule and in pari delicto are often used synonymously, but are not identical. See Official Committee of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus. Inc.), 329 B.R. 411, 424 n.5 (Bankr. S.D.N.Y. 2005). Seele's citation to Wagoner in support of the in pari delicto argument is indicative of this common error. In this case, the analysis is the same under Wagoner and in pari delicto.

10

agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation. Wight, 219 F.3d at 86; Bennett Funding, 336 F.3d at 100. "Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the Wagoner rule bars a trustee from suing to recover for a wrong that he himself essentially took part in." Wight, 219 F.3d at 87; accord Mediators, 105 F.3d at 826.

Seele's reliance on the Wagoner Rule is misplaced. The Wagoner Rule does not bar claims by a corporation against its own fiduciaries. In re Mediators, 105 F.3d at 826-27. Accordingly, it would not bar the IDI Estate from suing Stumpf and Kohl to recover the unpaid loans or to recover damages under any other theory.

**D.      Broadway Houston**

Broadway Houston is not a trust fund claimant, but the ground lessee of a Manhattan construction project on which IDI acted as construction manager. On June 9, 2005, Broadway Houston filed an action in the New York Supreme Court, Suffolk County against Kohl and Stumpf asserting claims of conversion, breach of fiduciary duty and damages as a result of the alleged diversion of Article 3-A trust funds on that project. (See Committee Statement, Ex. A.) Simultaneously with the commencement of the action, Broadway Houston obtained an ex parte temporary restraining order (the "TRO") that enjoined the disposition of Kohl's share of the sale proceeds of the Southampton house.[5] (See id., Ex. B.) Specifically, the TRO directed Kohl to

---

[5] Broadway Houston was a member of the Creditor's Committee at the time. The Committee now charges that Broadway Houston used information about the sale that it had obtained as a Committee member to grab the proceeds before they could be paid under the settlement agreement. (Committee Statement, at ¶ 13.) Broadway Houston has responded that at the time it obtained the TRO, it "was not aware of the source of the payment that Kohl would be making to the estate." (Response Of Broadway Houston Mack Development LLC To The Joint Brief Of Debtor And Official Committee Of Unsecured Creditors (i) In Support Of The Unresolved Portion Of The Motion For Entry Of An Order Approving Paragraph 8 Of The Plea Agreement With Ted Kohl And Paragraph 7 Of

11

deliver his share of the net sale proceeds to an escrow account to be maintained jointly by counsel to Broadway Houston and the Debtor. If a sale occurred prior to the June 23, 2005 return date of the underlying order to show cause, Kohl's share of the net sale proceeds was to be immediately delivered into the joint escrow account upon closing of title. In fact, the sale closed in May, prior to the issuance of the TRO.

The parties have spent a good deal of time debating when the TRO was served, and when Kohl paid $500,000 to Ms. Simon, the Debtor's lawyer, in connection with the settlement. The proofs of service attached to Broadway Houston's Response (ECF Doc. # 289) indicate that Broadway Houston sent the TRO to Kohl by certified mail on June 10, 2005, and that Kohl received it on June 14, 2005. The Committee and the IDI Estate maintain that Kohl paid the $500,000 to Simon on June 13, 2005, but have not offered proof of that fact. I assume for present purposes that Kohl received the TRO before he transferred $500,000 to the Debtor's counsel.

The state court did not, however, issue an order of attachment until January 9, 2006, after the $500,000 had been paid to Ms. Simon. More importantly, the order of attachment was never delivered to any sheriff. Broadway Houston nevertheless insists that the order of attachment gave it a "priority status" in the sale proceeds "despite the fact that the levy had not formerly attached." (Memorandum Of Broadway Houston Mack Development LLC In Further Support

---

The Plea Agreement With James Stumpt [sic] And (ii) In Response To Objections Thereto, dated Mar. 21, 2006, at ¶ 24)("Broadway Houston Response")(ECF Doc. # 289).)

Broadway Houston's statement is irresponsible. It knew by late May that the Kohls had a contract to sell the Southampton home, and that Kohl intended at the time to fund the entire settlement from his share of the sale proceeds. The information was set forth in the stipulation of settlement, that was mailed to the Committee's and Broadway Houston's bankruptcy counsel on May 25, 2005. (See ECF Doc. # 140.) The same law firm that represented Broadway Houston in the bankruptcy case also obtained the TRO on its behalf. In light of the disposition of the contested matter, it is unnecessary to address the Committee's accusation.

Of Its Response To The Joint Brief Of Debtor And Official Committee Of Unsecured Creditors (i) In Support Of The Unresolved Portion Of The Motion For Entry Of An Order Approving Paragraph 8 Of The Plea Agreement With Ted Kohl And Paragraph 7 Of The Plea Agreement With James Stumpt [sic] And (ii) In Response To Objections Thereto, dated Apr. 3, 2006, at ¶ 3.) Furthermore, because the TRO was issued in furtherance of the order of attachment, Broadway Houston "obtained a secured interest in the debt owed to it by Kohl from the moment the State Court issued the TRO." (Id., ¶ 4.) In other words, the interest created by the order of attachment related back to the issuance of the TRO.

Broadway Houston's position lacks merit. Under New York law, an attaching creditor must deliver the order of attachment to the sheriff in order to obtain priority in specific property or a debt. N.Y.C.P.L.R. 6203 (McKinney 1980) states:

> Where a plaintiff has delivered an order of attachment to a sheriff, the plaintiff's rights in a debt owed to the defendant or in an interest of the defendant in personal property against which debt or property a judgment may be enforced, are superior to the extent of the amount of the attachment to the rights of any transferee of the debt or property, except:
>
> 1. A transferee who acquired the debt or property before it was levied upon for fair consideration or without knowledge of the order of attachment; or
>
> 2. A transferee who acquired the debt or property for fair consideration after it was levied upon without knowledge of the levy while it was not in the possession of the sheriff.

Here, Broadway Houston did not deliver the attachment order to the sheriff, and there was no levy. Moreover, the IDI Estate received the $500,000 before the order of attachment

13

even issued, and hence, could not have received the transfer with knowledge of that order. Accordingly, Broadway Houston never obtained a statutory priority under Article 62.

Furthermore, the TRO did not give Broadway Houston a security interest in the sales proceeds. Ordinarily, disobedience of a court order is punishable by contempt. Broadway Houston has not identified any authority to support the proposition that an order restraining a transfer of property also grants a security interest or priority in the restrained property to the party that procured the order of restraint. In addition, the argument contradicts § 6203. Broadway Houston failed to do what was necessary to obtain a priority under that section. Hence, even if its ineffectual act relates back to the TRO, the TRO cannot give Broadway Houston any more that it got from the undelivered order of attachment.

Finally, N.Y.U.C.C. § 9-317 (McKinney 2002 & Supp. 2006) does not apply because Broadway Houston never acquired a security interest in the sales proceeds of the Southampton house.

## CONCLUSION

For the reasons set forth above, the objections are overruled, and the settlement funds are property of the estate, unencumbered by any claims of the objecting parties. Settle order on notice.

Dated: New York, New York
May 31, 2006

                                             _/s/ *Stuart M. Bernstein*_
                                             STUART M. BERNSTEIN
                                             Chief United States Bankruptcy Judge